EDWARD C. HOOKS, EMPLOYEE, PLAINTIFF v. EASTWAY MILLS, INC. & AF-
FILIATES, EMPLOYER, FIREMAN'S FUND INSURANCE COMPANY, CAR-
RIER, DEFENDANTS

No. 8410IC397

(Filed 7 May 1985)

**Master and Servant § 69— employee's refusal to sign form—refusal to submit to
tests**

    A worker's compensation plaintiff was not prejudiced by an erroneous
order of the Industrial Commission suspending payments until plaintiff signed
Industrial Commission Form 21 because plaintiff received payments to which
he was not entitled during the period when he refused tests, including a
myelogram, requested by defendants' doctor. There is no provision in the
Workers' Compensation Act allowing suspension of compensation for failing to
sign Form 21, but G.S. 97-27(a) required that plaintiff submit to the tests or re-
quest that the Commission find the tests to be unreasonable.

    Judge PHILLIPS dissenting.

APPEAL by plaintiff from the opinion and award of the North
Carolina Industrial Commission filed 1 November 1983. Heard in
the Court of Appeals 4 December 1984.

On 15 December 1980, while on the job in the employment of
defendant Eastway Mills, Inc., plaintiff suffered a disabling back
injury. For several months thereafter he was treated conserva-
tively by his orthopedic surgeon, Dr. King, who limited his pre-
scriptions to bed rest, muscle relaxants, traction for a brief
period, and a non-strenuous course of life. Plaintiff's claim under
the Workers' Compensation Act was denied by defendants, but
following a hearing an opinion and award was entered on 31 July
1981 establishing the compensability of the injury. At that time
plaintiff had not returned to work because he was able to do only
light work and no work of that type was then available for him;
and in the hope that the amount of compensation due plaintiff
could be agreed on by the parties that issue was not adjudicated
at the hearing.

On 24 August 1981, defendants mailed plaintiff a draft in the
amount of $6,416.55 in payment of the temporary total disability
compensation that was due up to that time; an Industrial Commis-
sion Form 21 for plaintiff's signature was also enclosed and re-
quest was made that he submit to a physical examination by Dr.

Caughran, a physician designated by defendants. Plaintiff did not sign the Form 21 at that time, but on 27 August 1981 he did submit to a physical and neurological examination by Dr. Caughran, who proposed to also admit plaintiff to the hospital and test him by various diagnostic procedures, including a myelogram. At first plaintiff agreed to this proposal, but changed his mind the next day after Dr. King examined him again and advised against a myelogram being done at that time. On 11 November 1981 defendants wrote a letter to the Industrial Commission, stating that the temporary total disability payments due plaintiff through 19 August 1981 had been sent to him along with a Form 21 which had not been returned, and that plaintiff had been examined by Dr. Caughran at their request, but had refused to enter the hospital for a complete diagnostic work-up, as Dr. Caughran proposed. Attached to the letter was a copy of Dr. Caughran's report of the physical and neurological examination that he made of plaintiff, which stated that the tests that he proposed to administer included a pentothal pain study, lumbar myelography, CT scan of the lumbar spinal canal, electromyography, and an epidural steroid injection or facet blocks under fluoroscopy. Following the receipt of defendants' letter Industrial Commission Chairman William H. Stephenson issued an *ex parte* order on 18 November 1981 directing defendants to make no further payments to plaintiff until the Form 21 was approved by the Commission and plaintiff submitted to the hospital work-up recommended by Dr. Caughran.

On 21 December 1981 plaintiff was again examined by Dr. King who determined that further tests were advisable and on 5 January 1982 he admitted plaintiff to the hospital where a myelogram and other diagnostic procedures were done. From these studies Dr. King concluded that plaintiff had a herniated disc at the L4-5 interspace but that surgery would probably provide only temporary relief, and therefore was inadvisable. On 15 March 1982, after examining the plaintiff again and also studying the reports of the tests that Dr. King conducted, Dr. Caughran also concluded that surgery on plaintiff's back was inadvisable, recommended that he get a job that involved no strain, and expressed the opinion that plaintiff had a fifteen percent permanent partial disability of the back. Meanwhile plaintiff had signed the Form 21

sent to him earlier by the defendants and forwarded it to the Industrial Commission, which approved it on 1 April 1982.

A hearing was then held to determine the remaining compensation due plaintiff and an opinion and award was entered by Deputy Commissioner Morgan R. Scott, in which it was found and concluded that plaintiff was temporarily and totally disabled from the date of the injury until 10 June 1982, he had been paid for such disability through 19 August 1981 and was entitled to further such payments only for the period from 20 August 1981 to 18 November 1981 and from 1 April 1982 to 10 June 1982. Upon plaintiff appealing to the Full Commission this award was affirmed and is the subject of this appeal. The other part of the Deputy Commissioner's award — that plaintiff has a fifteen percent permanent partial disability of the back and is entitled to be compensated therefor — was not appealed to the Full Commission by either party and is not involved in this appeal.

*W. David McSheehan for plaintiff.*

*Hedrick, Eatman, Gardner, Feerick & Kincheloe, by Mel J. Garofalo, for defendants.*

WELLS, Judge.

We decide two issues. First, that Chairman Stephenson was without statutory authority to suspend plaintiff's compensation payments for plaintiff's failure to sign the Industrial Commission Form 21, and therefore the Commission's conclusion that plaintiff was not entitled to compensation for that reason was in error. Second, plaintiff was not entitled to compensation during the period of time he refused to submit to the examinations requested by defendants' physician Dr. Caughran.

We are unable to find any provision in Chapter 97 of the General Statutes of North Carolina, the Workers' Compensation Act, which would allow the Chairman of the Commission, or the Full Commission to suspend compensation to which a worker would otherwise be entitled for the worker's failure to sign an Industrial Commission Form 21.

On the other hand, the provisions of N.C. Gen. Stat. § 97-27 (a), in pertinent part, are quite explicit as to the requirement for a

claimant for compensation to submit to an examination by a physician designated by his employer. We quote:

> After an injury, and so long as he claims compensation, the employee, if so requested by his employer or ordered by the Industrial Commission, shall . . . submit himself to examination, at reasonable times and places, by a duly qualified physician or surgeon designated and paid by the employer or the Industrial Commission. . . . If the employee refuses to submit himself to or in any way obstructs such examination requested by and provided for by the employer, his right to compensation and his right to take or prosecute any proceedings under this Article shall be suspended until such refusal or objection ceases, and no compensation shall at any time be payable for the period of obstruction, unless in the opinion of the Industrial Commission the circumstances justify the refusal or obstruction. . . .

We hold that the statute required that plaintiff undergo the diagnostic tests requested by Dr. Caughran, or, in the alternative, request the Commission to find such test to be not reasonable, in which case the Commission would be required to decide the matter. Plaintiff did neither, but simply unilaterally refused the tests. Plaintiff was therefore not entitled to compensation for the period 27 August 1981, when he refused the tests, until 15 March 1982, when he submitted to further examination by Dr. Caughran.

In summary, plaintiff was erroneously denied compensation between 15 March 1982 and 1 April 1982, but received compensation to which he was not entitled between 27 August 1981 and 18 November 1981. Under these circumstances, plaintiff has not been prejudiced by the Commission's order, and it is therefore

Affirmed.

Judge ARNOLD concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

The decision of the majority, which approves the forfeiture of substantial disability benefits due plaintiff, is erroneous for two reasons in my opinion and I dissent from it.

First, G.S. 97-27(a) in express terms authorizes the suspension of benefits only when the claimant *refuses to submit himself for an examination* by defendants' doctor and the Commission's findings show that plaintiff did not refuse to submit himself for examination, but promptly and cooperatively submitted himself for examination and Dr. Caughran conducted a complete physical and neurological examination. What plaintiff did not submit to, as the Commission's findings also show, was the administration of a myelogram and other diagnostic procedures upon his body; procedures that are beyond the scope of an examination, in my opinion, and thus not within the purview of the statutory language. A myelogram is the making of an X-ray record of the spinal cord, an internal structure of the body; it requires hospitalization, involves injecting a contrast dye between the delicate membranes which cover the spinal cord, is very painful, and entails some risk of great harm to the patient. In my view the legislature has not required employees to submit to this procedure at the mere request of their employers and the Commission was not authorized to suspend plaintiff's benefits when he refused. A majority of courts in this country interpreting similar statutes have reached the same conclusion "because of the graver character of the procedure involved." 1 Larson, Workmen's Compensation Law § 13.22(c) (1985). Another reason, I think, for not interpreting G.S. 97-27(a) as broadly as the majority does is that the law does not favor forfeitures.

Second, even if a myelogram is deemed to be an examination under the authority of the statute, instead of the invasive procedure that it really is, the Commission's failure to award benefits to plaintiff for the period involved was still erroneous. The statute expressly permits uncooperative or obstructive employees to receive compensation for the period of the refusal or obstruction when in the opinion of the Commission "the circumstances justify the refusal or obstruction," and under the record in this case no other rational opinion is possible, I believe, than that plaintiff's refusal to submit to the procedure was justified by the

circumstances. The Commission found as a fact that plaintiff refused to enter the hospital for the tests upon the advice of his own doctor, "and because he preferred for his doctor to perform them since he did not know Dr. Caughran." Since no other finding in opposition to or compromise of this finding was made, or could have been made from the evidence, the Commission was bound to conclude therefrom, I think, that plaintiff's refusal to undergo the tests was justified under the circumstances. Plaintiff had been under Dr. King's care for several months and was clearly justified in following his recommendation, rather than that of Dr. Caughran, who he had never seen before and who was there to assist the defendants, rather than protect plaintiff's health. Sensible people do not disregard the advice of their own doctors and follow that of strangers, and our workers' compensation law does not require them to under circumstances such as those recorded here.

My vote, therefore, is to reverse the Commission's decision denying plaintiff temporary total disability benefits for the period involved and to remand the case to the Industrial Commission for the entry of a decision awarding the plaintiff such benefits.